UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACOB L. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:24-CV-87-PPS-SLC |
| | ) |
| LELAND DUDEK, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff Jacob L. Jones seeks judicial review of the Social Security Commissioner's decision denying his application for disability insurance benefits. He asks this Court to reverse the Commissioner's decision and to remand this matter to the agency for a new hearing and decision. For the reasons below, the Court grants Jones's request.

### Background

Mr. Jones suffers from chronic diarrhea caused by lymphocytic colitis. In his application for disability benefits, Jones alleged that he became disabled on July 23, 2021. [DE 6 at 14.[1]] The Social Security Administration ("SSA") denied Jones's application, and after a hearing, an Administrative Law Judge agreed with the denial. [*Id.* at 14–28.]

---

[1] To ensure consistency across cites to the Parties' briefing, citations to the administrative record filed at DE 6 correspond to the blue file stamped digits at the top of the page.

The ALJ found that Jones had several severe impairments: (1) degenerative disc disease of the cervical and lumbar spine with radiculopathy, (2) ankylosing spondylitis, (3) spondyloarthropathy, (4) sciatica, (5) chronic pain syndrome, (6) right shoulder acromioclavicular degeneration, and (7) lymphocytic colitis. [*Id.* at 16.] The ALJ determined that Jones did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [*Id.* at 19–20.] The ALJ then determined Jones's residual functional capacity ("RFC"), which is an evaluation of what a person can still do despite their physical or mental limitations. According to the ALJ, Jones could:

> perform sedentary work . . . subject to the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing . . . ; and occasional stooping, kneeling, crouching, and crawling. He should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts. He can occasionally reach overhead and frequently in all other directions with the right dominant upper extremity. He would need a sit/stand option, allowing for the opportunity to stand for ten (10) minutes every thirty (30) minutes while remaining at the workstation and *not being off task more than ten percent (10%)* of the workday.

[*Id.* at 20] (emphasis added).

I have emphasized the last line in the ALJ's RFC analysis because it is critical. This is because a vocational expert ("VE") testified at the administrative hearing that if Jones was off task more than 10% of the workday, then that would be "work preclusive." [*Id.* at 72.] Because she concluded that Jones would not be off task more than 10% of the workday, the ALJ cited the VE's testimony that there are a variety of unskilled jobs in the national economy for a person with Jones's RFC. [*Id.* at 27.] As a

result, the ALJ found Jones was not disabled from July 23, 2021, through February 22, 2023, the date of the ALJ's decision. This decision became final when the Appeals Council denied Jones's request for review. [*Id*. at 5–7.]

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review the evidence to determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion. *Durham v. Kijakazi*, 53 F.4th 1089, 1094 (7th Cir. 2022). In the disability context, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Although the standard of review is deferential, an ALJ can't just state a conclusion unmoored from the evidence. This means that an ALJ's "decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)). In other words, the ALJ must build a "logical bridge between the evidence and the conclusions" so that I can give the claimant

3

meaningful judicial review. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (citation omitted).

There is five-step inquiry that the SSA must follow in evaluating claims for disability benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

> (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (cleaned up). The claimant bears the burden of proof at every step except step five. *Id.*

Jones appeals the ALJ's analysis of his RFC. As noted above, at step three the ALJ concluded that Jones did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ then analyzed Jones's RFC and concluded that Jones had the capacity to not be off task more than 10% of the workday. It is this finding that Jones contests. That finding was critical because, as I noted above, the vocational expert specifically testified that "off task time beyond up to 10 percent of the workday becomes work preclusive over a period of time." [DE 6 at 72.] This is entirely sensible. No employer is going to put up with an employee who is frequently away from their workstation in the bathroom dealing with chronic diarrhea.

Jones challenges the ALJ's refusal to credit Jones's testimony concerning the frequency, duration, and limiting effects of his chronic diarrhea caused by lymphocytic colitis. [DE 14 at 7.] First, Jones challenges the ALJ's reliance on the fact that he had not sought any gastroenterology treatment since July 2021. Jones also argues the ALJ, in

4

discounting his testimony, relied on the fact that Jones did not discuss his chronic diarrhea with a pain management specialist who treated him for other ailments.

In evaluating a claimant's symptoms, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms," and, if so, the ALJ then "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.

An ALJ must consider a claimant's statements about their symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. *Id*. § 404.1529(a). ALJs must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

    (1) The individual's daily activities;
    (2) Location, duration, frequency, and intensity of pain or other symptoms;
    (3) Precipitating and aggravating factors;
    (4) Type, dosage, effectiveness, and side effects of any medication;
    (5) Treatment, other than medication, for relief of pain or other symptoms;
    (6) Other measures taken to relieve pain or other symptoms;
    (7) Other factors concerning functional limitations due to pain or other symptoms.

*See id*. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8. In evaluating subjective symptoms, it is not "an examination of an individual's character." *Id*. at *2.

An ALJ's analysis of a claimant's subjective symptoms receives considerable deference and is overturned only if it is "patently wrong." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024). A court may reverse a credibility determination if it finds that the rationale provided is "unreasonable or unsupported." *Prochaska v. Barnhart*, 454 F.3d

5

731, 738 (7th Cir. 2006) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). But an ALJ may not draw inferences "about a claimant's condition from [infrequent treatment or a failure to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (citation omitted).

    I begin with Jones's argument that the ALJ dismissed his testimony concerning his bouts of diarrhea by misconstruing his record of treatment (or lack thereof) for lymphocytic colitis. At the outset, the ALJ recognized that there is little doubt that Jones's suffers from lymphocytic colitis; it was confirmed through colonoscopy biopsies. [DE 6 at 23.] The ALJ acknowledged Jones's testimony that he experiences debilitating diarrhea flareups 1-2 per month, 2-3 times per day, for 20-30 minutes each instance. [*Id.* at 24.] His diarrhea is so bad he has installed a television in his bathroom for when he is dealing with the issue. [*Id.* at 62–63.] But the ALJ discounted the effect of the diarrhea by noting there was "no evidence of any gastroenterology treatment since July 14, 2021." [*Id.* at 23.] The ALJ acknowledged that Jones's wife called his primary care provider in October 2022 to ask for a refill of Jones's budesonide, which is a steroid. [*Id.* at 24.] But the ALJ nevertheless concluded that Jones's failure to receive any treatment during the period at issue was "inconsistent with the degree of his reported symptoms and limitations." [*Id.* at 24.] Moreover, the ALJ cited medical evidence from July 2021 to note that Jones's diarrhea was "well controlled" on budesonide. [*Id.* at 23.]

    A review of Jones's medical records confirms that Jones received his lymphocytic colitis diagnosis in April 2020 and saw a gastroenterologist in July 2020 and again in

6

July 2021. [*Id.* at 284.] Through his spouse, he contacted a gastroenterologist telephonically regarding a medication refill in October 2022. [*Id.* at 679.] The ALJ considered each of these instances of treatment. Jones was scheduled to see a gastroenterologist in February 2023, but as the Commissioner points out Jones never informed the ALJ of this appointment either during the January 2023 administrative hearing or afterward.[2] So, the issue is not that the ALJ failed to consider the instances Jones says constitute his treatment. Instead, Jones argues that the ALJ failed to consider the context of this limited record of treatment. According to Jones, the ALJ failed to understand that his flareups occur even when he takes his medication and that he is stuck between a rock and a hard place because his doctors repeatedly told Jones that the only medication that provided him relief could not be used long-term.

While the ALJ referenced a medical provider's comment that "indefinite use of budesonide is not clinically recommended", the ALJ failed to explain the significance of this comment as it relates to Jones's particular treatment. [*Id.* at 24.] For example, Jones's gastroenterologist discussed with him that "budesonide is a medication that is not usually used long-term" and that "[t]he ultimate goal is to get him off of budesonide." [*Id.* at 283.] Jones corroborated these facts at the hearing: "I'm on Budesonide for the entirety of my life . . . . [budesonide] stops the flareup when I take it, but they warned me about taking it long periods of time because it was destroying my body." [*Id.* at 55.] In addition, the ALJ failed to appreciate that the frequency of Jones's colitis flareups (1-2

---

[2] That said, the records of Jones's primary caregiver (exhibit 18F in the record) note a scheduled February 10, 2023, gastroenterology appointment. [DE 6 at 719.]

7

per month, 2-3 times per day, for 20-30 minutes each instance) occur even when he uses budesonide and follows a bland diet. When he is experiencing a colitis flareup, Jones testified that he begins his use of budesonide, but it takes three days for the budesonide to "kick in" and control the condition. [*Id*. at 62.] Jones reported no relief with use of two other medications: loperamide and cholestyramine. [*Id*. at 292.]

The Seventh Circuit has instructed that ALJs should not draw inferences regarding infrequent treatment against a claimant unless the ALJ explores the claimant's explanation as to the perceived conservative treatment. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); SSR 16-3p, 2017 WL 5180304, at *9. This is precisely what the ALJ has done here, faulting Jones for not seeking care from a gastroenterologist more frequently without investigating why treatment did not occur more often. [DE 6 at 24.] The ALJ should have more thoroughly explored Jones's lack of additional treatment at the hearing.

In discounting Jones's testimony about the intensity, persistence and limiting effects of his diarrhea, the ALJ also relied on the fact that Jones had not reported colitis flareups to his providers at the same frequency to which he testified to during the administrative hearing. [*Id*.] In support of this conclusion, the ALJ relied upon two exhibits (containing over 150 pages of medical records). The first exhibit (Ex. 17F) is Jones's medical records from treatment with Summit Pain Management. In these records, the reason given for most appointments were Jones's back, neck, and shoulder

8

pain. [*Id*. at 561, 565, 569, 579.[3]] The ALJ did not identify, nor does the Court see, any note that Jones *denied* diarrhea flareups during these visits. These medical records simply concern different ailments. I'm at a loss to see why the ALJ would expect Jones's diarrhea to be reported to the pain management specialist who was treating conditions other than Jones's lymphocytic colitis.

The second exhibit (Ex. 18F) is Jones's medical records from treatment with Parkview Physicians Group. In these records, the surgical pathology report that led to Jones's diagnosis of lymphocytic colitis lists "[c]hronic diarrhea" as the clinical information provided. [*Id*. at 617–18.] An April 24, 2020, colonoscopy indicated "[c]linically significant diarrhea of unexplained origin." [*Id*. at 619.] "Chronic diarrhea" was also documented in November and December 2022, though (as the ALJ noted) it was not in March and May 2022. [*Id*. at 654, 659, 665, 697, 727.] As the ALJ discussed, Jones sought to refill his budesonide in October 2022, but instead his medical provider ordered him to submit additional stool testing and, ultimately, advised against indefinite or long-term use of that steroid. [*Id*. at 679.]

To summarize, Jones has an awful dilemma on his hands: he only gets relief from his lymphocytic colitis when he is on a steroid. But his doctor has told him that long term use of the medication is entirely too risky, and he has to somehow wean himself from the medication. Other medications provide Jones no relief for his debilitating diarrhea. Jones was under the treatment of a gastroenterologist, but the ALJ deemed it

---

[3] The reason provided for one other appointment was "8 week follow up," [*id*. at 574], and the reasons given for x-ray examinations were lumbar facet arthropathy and right shoulder pain [*id*. at 594, 596].

to be too infrequent of a treatment regimen for his symptoms to be as bad as he says they are. Jones's "conservative" treatment was held against him without consideration of his reasons for such conservative treatment, including Jones's testimony that his providers warned him against long-term use of budesonide because it was "destroying [his] body." [*Id.* at 55.] For this reason, I reluctantly conclude the ALJ's consideration of Jones's subjective symptoms regarding the lymphocytic colitis was "patently wrong" because she drew improper inferences about Jones's infrequent treatment without fully exploring his explanation for not getting more medical care. *See Hess*, 92 F.4th at 679; *Beardsley*, 758 F.3d at 840. This is a critical inquiry because, to repeat, if Jones's diarrhea is as bad as he says it is, then in all likelihood, there will be no jobs available to him in the national economy.

The case must be remanded to give the ALJ another opportunity to more fully explore the reasons for rejecting Jones's testimony about the intensity, persistence and limiting effects of his diarrhea and his explanation for not pursuing additional medical care for it.

## Conclusion

Based on the above, the Court hereby **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on March 24, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT